Southard J.
I consider this question of very considerable importance, under the laws of this state, and - one which in its decision must have extensive and powerful operation upon the interests of society. If this be the proper mode of settling the question of right to the possession of the person of an infant who is under guardianship, there will be a very ready and easy mode of settling those disputes which now exist, and thousands more will be created by the very means which are established for determining them. Nevertheless, if the law require a decision in *favour of these guardians, we must meet the consequences and establish the precedent.
The first inquiry which presses itself upon my mind, is, the right of these guardians to the person of the child. And this I consider complete and perfect: such a right as they would be justified in enforcing, and if resisted, he who should oppose them would lay himself liable to severe chastisement. The nature of the guardianship created by our statute, nay the very relation of guardian and ward gives the right. The principles applicable to this subject, before the enaction of our statute, and the words of that statute, place the guardian in loco parentis; and as the father is entitled to the possession of the person of his child, so is the guardian to that of his ward. It is also manifest to my mind, that no difficulty, in this case, results from the mode of proving the guardianship. The Orphans’ Court which granted the letters which we have before us, is expressly authorised, by the statute, to grant letters of guardianship. It is expressly vested with the power to determine in what cases and to whom the guardianship shall be entrusted; and being a court which has authority, and having exercised that authority, we are bound to regard it as properly exercised, unless when the exercise of the power is fairly brought up and contested, (a) Nay, farther: this court has no right to say that the guardianship was improperly given to these men. The appeal from the decision of the Orphans’ Court, is to a different tribunal. (b)
*514 It is not then, either from the right of a guardian to - the person of his ward, or from any doubt that these applicants really are the guardians and are so to be considered, that any difficulty results in the present case. But it is from the doubt whether the writ of habeas corpus be the proper mode of contesting the rights of these parties, under facts like these. What is this writ of habeas corpus? The writ used, in this case, is the great and efficacious writ, ad subjiciendum, which is directed to a person detaining another, and commanding him to produce the prisoner, with the day &c. 3 Bl. Com. 131. 8 St. Trials 142. It is called a high prerogative writ, and issuing by common law, and running throughout the kingdom, because the king is entitled, at all times, to have an account why the liberty of his subject is restrained. Cro. Jac. 543. It is for the relief of the prisoner, and the prisoner only. It is to inquire why the liberty of the citizen *is restrained. This then is'its legitimate and only object; to relieve from restraint and imprisonment. Wherever there is no imprisonment there is no ground for the writ of habeas corpus. And I apprehend no case has been cited, nor can any one be cited, where this writ is either used to determine a question of property, or the conflicting rights to the possession of the person: it looks to another object altogether. If one of two parties, unlawfully restrain and imprison the person about whom the contest arises, the writ steps in and relieves from the restraint, but leaves the contest, as to possession, to be decided in another mode. This principle is amply maintained in the case of Rex v. Smith, (2 Str. 982.) And if we were permitted to pursue the history of judicial proceedings in England, to a later period, the cases of the King v. Reynolds, 6 T. R. 497, and Rex v. Edwards, 7 T. R. 745, would abundantly confirm the doctrine there advanced. In the first mentioned case the court expressly refused to decide upon the claim of possession to the guardianship, but said it could only deliver the boy out of the custody of his aunt, and tell him to go where he pleased ; that the guardian might maintain his right by other modes of action. I recollect nothing which at all questions the propriety of this decision, unless it be the case cited from *515 8 Mod. 214, and 3 Bur. 1436. The case in Modern is not very satisfactorily reported there, but is better in other books: and in the case in Burrows, which is indeed a leading and conclusive case, that in Modern, as well as the other cases on this subject, are correctly abridged by lord Mansfield; and the doctrine ho lays down I take to be law. Ho there says. “ In cases of writs of habeas corpus directed to private persons, the court is bound to set the infant free from all improper restraint, and this ex debito justitios, but it is not bound to deliver him over to any body, nor to give him any privilege. This must be left to the discretion of the court under the circumstances.” In the case of Mary Johnson, the court did not even order the child into the possession of the guardian, but permitted him to take her.
When we look into this case, I am free to say that I think the guardians entitled to the infant. They have a right to take possession of it, and the step-father has no right to resist. If he do, ho does it at his peril, and that peril by no means small. But when we inquire why this court, on this writ, should interfere, *1 do not find any imprisoment or restraint, which alone authorises us to interfere, and therefore I am of opinion that no order for delivery of the infant to the guardian should be made; but let the child go where lie will; and let the guardian, if he pleases, either take possession of him, or by course of law enforce his right to the custody of his person.

 Eldridge vs. Lippencott, Coxe 397. Den. Vanderveere vs. Gaston, 1 Dutch. 615. Acts of 1871, p. 102.

 But see Tenbrook vs. McColm, 5 Hal. 333, S. C. 7 Hal. 97.